IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| IN RE: PILGRIM'S PRIDE<br>FAIR LABOR STANDARDS<br>ACT LITIGATION | MDL DOCKET No. 1:07-CV-1832 |
| THIS DOCUMENT RELATES TO:<br>All Actions | JURY DEMANDED |

## JOINT REPORT PURSUANT TO LOCAL CIVIL RULE 26.1

Pursuant to Local Rule 26.1 and Federal Rule of Civil Procedure 26(f), counsel for the parties hereby report to the Court that they held a Rule 26(f) conference on July 30, 2007 and continued to confer by telephone thereafter.

The parties' areas of agreement are set forth below. Areas of conflict are set forth in the "Unresolved Issues" section at the end of this report.

**(1) Any changes in timing, form, or requirements of mandatory disclosures under Fed. R. Civ. P. 26(a).**

The parties have already completed mandatory disclosures in the *Aaron v. Pilgrim's Pride,* Civ. No. 06-1082 (W.D. Ark.), case prior to the transfer and coordination of these actions in this multi-district litigation. The parties will supplement these disclosures as required under the Federal Rules.

**(2) Date when mandatory disclosures were or will be made.**

See above.

**(3) Subjects on which discovery may be needed.**

The parties agree that discovery may be needed on at least the following subjects after the Court rules on Plaintiffs' motion for collective action certification and notice:

- policies and practices regarding the compensation of hourly chicken processing workers who file consents ("opt-in workers");
- policies and practices relating to "clocking in," punching of time cards or scanning of identification cards or otherwise recording time worked by opt-in workers;
- the safety or sanitary equipment, clothing, gear or tools that opt-in workers wear or use for their jobs; the reason for wearing each item; time spent donning/doffing such items; and policies and practices related to the use, maintenance or sanitization of such items;
- plant, departments, and positions worked by opt-in workers;
- the frequency and location where equipment, gear or clothing item is donned and doffed

- by opt-in workers;
- process and purpose for cleaning each item of equipment, gear or clothing and the frequency and duration of such cleaning;
- policies and practices concerning the time that opt-in workers are required to be on the premises of the facility or to be at their prescribed work place or position on the line;
- policies and practices concerning unpaid breaks;
- job descriptions or documents which describe categories of jobs for opt-in workers not exempt from the overtime provisions of the Fair Labor Standards Act;
- communications with any state or federal governmental agency (such as the Department of Labor, Internal Revenue Service, OSHA, or others) which relate to: compliance with state or federal minimum wage or overtime laws, state or federal occupational health and safety laws, or any other state or federal law relating to donning/doffing or wages and compensation for opt-in workers;
- collective bargaining agreements, union negotiations, contracts or employment agreements related to the terms and conditions of employment of opt-in workers at any plant involved in the case.

As set forth in the Unresolved Issues section, Plaintiffs believe that the above discovery should be permitted for all hourly chicken processing workers rather than limited to only opt-in workers as Defendant proposes. Additionally, the parties do not agree that discovery is needed on subjects related to: 1) walking time; and 2) communications from poultry industry groups regarding compliance with state and federal laws.

As set forth in the Unresolved Issues section in response to item No. 6, the parties also disagree about whether persons who only opt-in to the class but are not named plaintiffs should be subject to written discovery

**(4) Whether any party will likely be requested to disclose or produce information from electronic or computer-based media.**

**Electronic Discovery**

Plaintiffs intend to seek electronic discovery from Defendant. This includes at least two types of electronic discovery. The first is time keeping or payroll records reflecting hours worked and paid going back for three years for employees on the chicken-processing line who have filed opt-in consents. Second, Plaintiffs intend to ask Defendant to perform an e-mail search for certain key words to be identified through discovery. Defendant has agreed to retain electronic payment and time records for all facilities at issue during the applicable time period and to produce such records concerning opt-in workers to Plaintiffs during discovery. Defendant has further stated that all electronic mail data is maintained on a searchable central database for a three-year period and that it will main such data for the applicable time period. Defendant presently does not intend to seek electronic discovery from Plaintiffs but reserves the right to request electronic discovery.

Plaintiffs have also requested that Defendant identify any electronic data maintained concerning entry times at security screenings as employees enter or exit the plant as well as any

other security cameras or surveillance data. Defendant has agreed to determine whether such electronic data exists, and if so, to retain data created as a result of identification-badge screenings. Defendant has agreed to provide a sample of surveillance data/video.

**(a) whether disclosure or production will be limited to data reasonably available during the ordinary course of business**

Based on the representations of Defendant about the data it maintains in the ordinary course of business, Plaintiffs intend to limit disclosure or production to data reasonably available to the parties in the ordinary course of business.

**(b) the anticipated scope, cost and time required for disclosure or production of data beyond what is reasonably available to the parties in the ordinary course of business;**

Plaintiffs do not presently anticipate a need to request production of data beyond what is reasonably available to the parties in the ordinary course of business.

**(c) the format and media agreed to by the parties for the production of such Data as well as agreed procedures for such production;**

As set forth in the Unresolved Issues section, the parties have not reached agreement on the electronic format of the production and are continuing to discuss this issue.

**(d) Whether reasonable measures have been taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise;**

Defendant has stated that it has issued a company-wide litigation hold, which establishes a process that preserves historical, current and future paper and electronic information from business, IT, and records-management personnel likely to have relevant information, including the data identified in 4(c) above. Defendant will periodically re-issue litigation-hold notices throughout the litigation. Defendant's litigation hold, however, does not encompass surveillance video/data.

**(e) other problems which the parties anticipate may arise in connection with electronic or computer-based discovery.**

None at this time.

**(5) Date by which discovery should be completed.**

The parties' respective positions are set forth in the Unresolved Issues section.

**(6) Any needed changes in limitations imposed by the Federal Rules of Civil Procedure.**

The parties' respective positions are set forth in the Unresolved Issues section.

___

**(7) Any Orders, e.g. protective orders, which should be entered.**

The parties anticipate requesting an order to protect the confidentiality of information, such as trade secrets, and confidential personnel information, to protect the privacy of named plaintiffs and those who opt-in to the case.

**(8) Any objections to initial disclosures on the ground that mandatory disclosures are not appropriate in the circumstances of the action.**

As stated above, the parties have already completed mandatory disclosures in the *Aaron* case prior to the transfer and coordination of these actions in this multi-district litigation.  The parties will supplement these disclosures as required by the Federal Rules.

**(9) Any objections to the proposed trial date.**

There is no trial date set.

**10) Proposed deadline for joining other parties and amending the pleadings.**

The parties agree that the deadline for amending the pleadings or joining other parties will be 60 days after this Court rules on Plaintiffs' motion for collective action certification and court-supervised notice.

**11) Proposed deadline for completing discovery. (Note: In the typical case, the deadline for completing discovery should be no later than sixty (60) days before trial.)**

See the parties' response to Item no. 5 in the Unresolved Issues section.

**12) Proposed deadline for filing motions other than motions for class certification. (Note: In the typical case, the deadline for filing motions should be no later than sixty (60) days before trial.)**

The parties agree to file *Daubert* motions no later than 60 days before trial.  The parties respective positions on deadlines for filing motions for summary judgment and, if a class is certified, any motion for decertification of a class are set forth in the Unresolved Issues section.

**13) Class certification: In the case of a class action complaint, the proposed deadline for the parties to file a motion for class certification. (Note: In the typical case, the deadline for filing motions for class certification should be no later than ninety (90) days after the Fed.R.Civ.P. 26(f) conference).**

The Court has set September 21, 2007 as the deadline for Plaintiffs to move for the certification of a collective action and the issuance of notice to prospective members of the class.

## UNRESOLVED ISSUES

The Parties' respective positions on unresolved issues are set forth below. Since the unresolved issues concern discovery, which will not be conducted before the Court rules on Plaintiffs' motion for collective action certification, these issues need not be resolved by the Court at this time.

**A.    Item (3) Subjects on which discovery may be needed.**

**1.  Discovery as to All Hourly Chicken Processing Workers**

**PLAINTIFFS' RESPONSE:**

Plaintiffs believe that discovery on the topics identified should not be limited to opt-in workers but should be permitted for all hourly chicken processing workers. Defendant's policies and practices applicable to all hourly chicken processing workers are relevant to whether Defendant engaged in a pattern or practice of failing to compensate its chicken processing workers and as to Defendant's position as to the compensability of the time at issue.

**DEFENDANT'S RESPONSE:**

Defendant believes that discovery should be limited to opt-in workers only as the identities of the collective action members will have been determined during the discovery period.

**2.  Walking Time**

**PLAINTIFFS' RESPONSE:**

Plaintiffs do not believe discovery is necessary on issues related to walking time. In *IBP v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514 (2005), the Supreme Court held that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity . . . is covered by the FLSA." *Alvarez*, 126 S.Ct. at 525. Plaintiffs recognize that the sequence of the tasks performed may be relevant to determine at what point the continuous work day commences and ends, *i.e.,* whether the walking time occurs after the obtaining or donning of the first piece of equipment that is integral and indispensable to the job. However, Defendant's attempt to seek discovery on the starting or ending point for each walk, the purpose of each walk, the distance of each walk, and amount of time spent walking is neither "relevant to the claim or defense of either party" nor is it "reasonably calculated to lead to the discovery of admissible evidence" as provided under Fed.R.Civ.P. 26(b) (1). The limited, if any probative value of this discovery is far outweighed by the volume and burden on Plaintiffs that such discovery would entail under Fed. R. Civ. P. 26(b) (2) (C). Although, there may be a dispute as to when the compensable work day begins, this is a separate issue from walking time, and does not require discovery on the starting or ending point for each walk, the purpose of each walk, the distance of each walk, and amount of time spent walking.

Contrary to Defendant's assertion, the discovery it seeks on walking time is not related to the de minimis defense. As the Department of Labor recognized in its authoritative interpretation of the *Alvarez* decision, *Alvarez* "clearly stands for the proposition that where the aggregate time spent donning, walking, waiting and doffing exceeds the de minimis standard, it is compensable. Any other conclusion would be inconsistent with the continuous workday rule." May 31, 2006, DOL Mem. at 4-5, attached hereto as Ex. 1. Thus, the only issue that warrants discovery relates to what constitutes the first and last compensable act, and the aggregate amount of time expended in uncompensated work between these points in time. The amount of time workers spend walking, the purpose of the walk, or distance walked, does not fall within the scope of discovery as set forth in Fed.R.Civ.P. 26(b) (1).

**DEFENDANT'S RESPONSE:**

Defendant seeks discovery on the topics below related to walking time:

- for each position worked, the starting point and ending point for every walk that plaintiffs seek compensation;
- the purpose of each walk;
- the distance of each walk; and,
- the amount of time spent walking.

Relevance is not the test for the scope of discovery under the Federal Rules. Discovery on walking time is needed because it relates directly to whether the opt-ins are similarly situated and whether this case is a proper representative action. Moreover, Plaintiffs' argument is conclusory. Defendant does not concede that all walking follows a compensable act. In addition, walking-time discovery is necessary for the de minimis defense and on the issue of alleged damages. Finally, *Alvarez* does not state that information about walking distance, time, etc. is not discoverable only that walking time in certain circumstances is compensable. Defendant is entitled to determine whether it is compensable and if it is, what the damages are.

**3. Poultry Industry Group Communications**

**PLAINTIFFS' RESPONSE:**

Plaintiffs intend to seek discovery on communications from any poultry industry group (such as the National Chicken Council, United States Poultry and Egg Association or others), which relate to: compliance with state or federal minimum wage or overtime laws, state or federal occupational health and safety laws, or any other state or federal law relating to donning/doffing or wages and compensation for hourly chicken processing workers, as such communications may bear on Defendant's knowledge that the time at issue is compensable, and therefore its willfulness in failing to pay employees for all overtime worked.

**DEFENDANT'S RESPONSE:**

This information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and/or it is protected from discovery under the attorney-client and/or self-critical analysis privilege or other applicable privilege.

B.   **Item (4)  Electronic Discovery**

**(c) the format and media agreed to by the parties for the production of such Data as well as agreed procedures for such production;**

The parties have not reached agreement on the electronic format of the production of this data and are continuing to discuss this issue.

**PLAINTIFFS' RESPONSE:**

Plaintiffs request that the clock-in and out times, payroll data and security gate scan times be provided in the SAP software, other software in which Pilgrim's Pride collects this data, or other database program. Plaintiffs request information concerning the format and procedures used for storage and backup of the requested information. Plaintiffs also request assistance in interpreting the data and printouts of samples of this data that may assist Plaintiffs in understanding the data.

**DEFENDANT'S RESPONSE:**

Pilgrim's has agreed to produce clock-in and out times, payroll data and security gate scan times for opt-in workers in electronic form.

C.   **Item (5) Date by which discovery should be completed.**

**PLAINTIFFS' RESPONSE:**

- Plaintiffs propose that the parties be permitted to conduct discovery for 10 months to begin after a ruling by the Court on Plaintiffs' motion for collective action certification and notice.  Plaintiffs believe this is a sufficient amount of time to conduct relevant discovery as Plaintiffs have proposed in item 6 below.

**DEFENDANT'S RESPONSE:**

- Given the potentially vast scope of this lawsuit, Pilgrim's anticipates that discovery will require a minimum of 18 months.  Whether more than 18 months is necessary will depend on the number of plants included in the lawsuit and the number of plaintiffs.

D.   **(6) Any needed changes in limitations imposed by the Federal Rules of Civil**

___

**Procedure.**

**PLAINTIFFS' RESPONSE:**

- Depositions - Plaintiffs propose a modification of the ten deposition limitation of Fed. R. Civ. P. 30(a)(2).  Plaintiffs propose a limit of 100 deposition hours for each side.

- Interrogatories - Plaintiffs propose that consistent with Fed. R. Civ. P. 33(a), interrogatories, not exceeding 25 in number, may be served on named plaintiffs in the Consolidated Complaint only.  Plaintiffs will provide sufficient information on each opt-in worker so that Defendant may identify the position and plant in which each plaintiff worked.

- Plaintiffs' proposal of 100 deposition hours per side provides the parties with a reasonable amount of time to conduct necessary discovery while also ensuring the parties conduct discovery in an efficient and expeditious manner.  The parties have the flexibility to use the deposition time as each side chooses, and Defendant may depose named plaintiffs as well as opt-in workers.

- Defendant proposes individualized discovery of each of the 323 individuals who Defendant asserts were previously named as a plaintiff in any of the related actions. In addition, Defendant seeks to depose a "statistically significant" sample of all opt-in workers.  Over 3,000 individuals have already filed consents to join this action, with the possibility of several times this number joining the case should notice be granted. Defendant's proposal would require individualized discovery of hundreds and potentially even over a thousand individuals, which would entail far more discovery than is needed to challenge certification should it be granted or to defend against liability.

- The purpose of Plaintiffs' filing a Consolidated Complaint was to eliminate the duplication of the prior complaints, and accordingly reduce the number of named plaintiffs in the Complaint.  Should these actions be returned to the transferor forums for trial, Plaintiffs expect the named plaintiffs would be largely the same. Should there be any additional named plaintiffs added, Plaintiffs would be prepared to make such persons available for appropriate discovery.  Thus, there is no need for Defendant to conduct individualized discovery of the 323 individuals named in the earlier Complaints.  Further, contrary to Defendant's assertions (p. 11 & n. 4), the MDL proceedings do not expand the scope of this case from that in the *Aaron* case, originally before this Court, since Plaintiffs there sought company-wide certification.[1]

- Nor is there any entitlement to individualized discovery on liability to opt-in workers in a FLSA action.  *See, e.g., McGrath v. City of Philadelphia,* 1994 WL 45162 at *2, 1

---

[1/]   The only plant that has been transferred in the MDL proceeding that was not at issue in the *Aaron* action is the Elberton, Georgia plant.

Wage & Hour Cases. 2d (BNA) 1502 (E.D. Pa. 1994); *Adkins v. Mid American Growers, Inc.,* 143 F.R.D. 171, 174 (N.D. Ill. 1992). Allowing the extensive individualized discovery of opt-in workers that Defendant seeks would defeat the purpose of 29 U.S.C. § 216(b), which allows individuals to proceed collectively. In providing for collective actions, Congress recognized the need to provide workers the advantage of lower individual costs to vindicate rights by the pooling of resources. *See Hoffman-La Roche, In., v. Sperling,* 493 U.S. 165, 170 (1989). As the court in *McGrath* observed, allowing discovery of opt-in class members "would only serve to obfuscate the issues and drastically enhance the costs of litigation. Such a result cannot be countenanced." 1994 WL 45162 at *3. Further, "[t]aken to its logical limits, individualized discovery would prevent [class] actions from being litigated." *Adkins,* 143 F.R.D. at 174. This is consistent with well established case law under Rule 23, holding that individualized discovery of class members who are not named plaintiffs is strongly disfavored. *See, e.g., Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986); *Clark v. Universal Builders,* 501 F.2d 324, 340-41 (7th Cir. 1973); *Worlds of Wonder Securities Lit.,* 1992 WL 330411 at *2 (N.D. Cal. July 9, 1992). These principles of discovery developed in Rule 23 cases are equally applicable to FLSA cases where members of the class must opt-in. *See McGrath*, 1994 WL 45162 at *2; *Adkins*, 143 F.R.D. at 174.

- The cases that have refused to permit discovery of absent class members have done so precisely because the potential burden on those members would discourage their participation in the case, thereby artificially reducing class size and undermining the efficiency and usefulness of the certification decision. *See, e.g.,* Newberg on Class Actions, (4th ed. 2002) Vol. 5, §16.1 at 120 ("If a class member is intimidated to the point of exclusion, another goal of Rule 23, the resolution of common claims, will be defeated."). These concerns are equally present in the collective action context, where the class members must opt-in to the case and the prospect of individual discovery may deter the exercise of their rights to participate in this action. As such, Defendant's proposal to structure class notice to inform anyone opting in that they may be required to answer written discovery and/or provide a deposition is unreasonable as it would unnecessarily deter potential plaintiffs from participating in this action.

- Although the parties each cite cases to support their respective positions as to whether discovery of opt-in workers should be permitted, the parties agree that the conduct of discovery is committed to the sound discretion of the Court. *Baker v. General Motors Corp.,* 86 F.3d 811, 816 (8th Cir. 1996). Plaintiffs' proposal provides a reasonable framework to commence discovery. Should either party conclude that more discovery is needed, the party may apply to the Court, upon good cause shown, to seek additional discovery.

- The Federal Rules provide that the Court shall limit discovery under circumstances such as these where the discovery sought is unreasonably cumulative and duplicative; the discovery may readily be obtained through less burdensome and expensive means;

MDL DOCKET NO. 1:07-CV-1832

9

and the discovery would result in an undue burden and expense far exceeding any benefit to the case. *See* Fed.R.Civ.P. 26(b)(2)(C). [2] Since there are approximately 20 facilities at issue and a set number of job positions at each plant, a limited number of depositions will be sufficient, regardless of the total number of opt-in workers who join the case. Further, it is Defendant and not Plaintiffs that already has access to virtually all of the central facts, though its own pay and time records, knowledge of its plant managers or other employees and its own observation of the activities of the workers at issue. Defendant will also have sufficient identifying information for all opt-in workers from which to identify the position and plant in which they worked. Any possible benefit to Defendant of the expansive and cumulative discovery it seeks is greatly outweighed by the considerable expense and enormous time it will consume and the great deterrent it will present to persons who might otherwise seek to protect their rights in this action.

- Defendant's assertion that Plaintiffs' deposition proposal is insufficient, appears to assume that Defendant will need to depose each named plaintiff for a full seven hours. However, there is no basis to believe such a lengthy use of deposition time is warranted. Plaintiffs' proposal does not restrict Defendant from conducting discovery of named plaintiffs and opt-in workers, but rather, imposes a time limit to encourage the efficient litigation of this action with discovery focused on topics important to the prosecution and defense of the case.

### **DEFENDANT'S RESPONSE:**

- The Complaint alleges that Pilgrim's has violated the Fair Labor Standards Act by failing to pay employees for donning, doffing, and cleaning certain clothing as well as walking on Pilgrim's premises. The Complaint further alleges that the employees working on or near the production line at 20 separate Pilgrim's plants across the country are similarly situated. Therefore, discovery is needed on the topics identified in section 3 above for each named and opt-in plaintiff.

- The conduct of discovery is committed to the trial court's sound discretion. *Baker v. General Motors Corp.,* 86 F.3d 811, 816 (8th Cir. 1996). But a party must be allowed the opportunity to fully discover the facts necessary to support its claims and defenses. A

---

[2/] Rule 26 provides that the Court shall limit the extent of discovery methods otherwise permitted where it determines that:

> i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

---

new trial will be granted if the errors complained of amount to a gross abuse of discretion resulting in fundamental unfairness. *Derby v. Godfather's Pizza, Inc.,* 45 F.3d 1212, 1215 (8th Cir. 1995).

- Pilgrim's proposed discovery plan fairly accounts for the Plaintiffs' interests in minimizing their costs and burden while at the same time allowing Pilgrim's to fully explore facts that may support its defenses.  Specifically, Pilgrim's requests that it be allowed to conduct discovery concerning each named Plaintiff (including the individuals who were named Plaintiffs before the consolidated complaint was filed) and a statistically significant sample of all opt-in Plaintiffs.   This discovery is necessary to enable Pilgrim's to adequately defend itself in this action as well as the separate actions which comprise this consolidated action.  Such a proposal has been utilized by other courts that acknowledge it fairly protects both parties.  "[L]imiting discovery to a statistically significant sampling, at this juncture, will both reasonably minimize the otherwise extraordinary burden imposed on plaintiffs and their counsel and yet afford the defendant a reasonable opportunity to explore, discover and establish an evidentiary basis for its defenses." *Smith v. Lowe's Home Centers, Inc.,* 236 F.R.D. 354, 357-58 (S.D. Ohio 2006).  In *Lowe's*, the parties ultimately agreed upon 100 depositions of plaintiffs, including 89 from the opt-in class of 1492 individuals.  *See* Agreed Order, *Smith v. Lowe's*, p. 1, attached as Exhibit 2.  Other courts agree and have permitted discovery on both named and opt-in plaintiffs.  *Bradford v. Bed Bath & Beyond, Inc.,* 184 F. Supp.2d 1342, 1344 (N.D. Ga. 2002); *Krueger v. New York Telephone Co.,* 163 F.R.D. 446, 449-52 (S.D.N.Y. 1995 (allowing individualized discovery because each plaintiff "freely [chose] to participate and each of whom has relevant information with respect to claims and defenses in this action); *see also Kaas v. Pratt & Whitney,* 1991 WL: 158943 (S.D. Fl.).[3]  The opt-in vehicle was intended to ensure that all opt-in plaintiffs have a role in the litigation and are participants. *Krueger,* 163 F.R.D. at 449-52.  Cases involving the discovery in a Rule 23 class action are not applicable because they are fundamentally different procedural mechanism. *Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1249 (11th Cir. 2003).  Therefore, Plaintiffs' reliance on the cases in the Rule 23 context dealing with "absent" class members are wholly inapplicable.  All plaintiffs (named or opt-in) have chosen to participate in this litigation, have relevant information and should therefore be subject to discovery.  Assuming that a class is conditionally certified, class notice can include language that informs the potential opt-ins that they may be required to answer written discovery and/or provide a deposition.

---

[3]     Additionally, other courts have permitted defendants in FLSA actions to depose a representative sample of the opt-in Plaintiffs.  *See* Scheduling Orders in *Brown v. Dolgencorp, Inc., Fox, et. al. v. Tyson Foods, Inc.*, *Alcantara v. Mountaire Farms, Inc.,* (granting discovery of all named plaintiffs and certain opt-in plaintiffs as well as all trial witnesses)  attached as Exhibits 3-5.

- Plaintiffs' proposal for 100 deposition hours is unreasonable.[4]  This case currently involves 8 separate lawsuits[5] and 20 facilities nationwide, and each facility has multiple departments, an assortment of jobs within each department, and various shifts.  Under the Federal Rules of Civil Procedure, a deposition may last up to 7 hours.  Additionally, the Federal Rules provide that each party is entitled to 10 depositions per side.  In short, that means that if this was only a single-plaintiff case, Pilgrim's would be entitled to 10 depositions (at 7 hours a piece) or 70 hours of deposition time.  Yet, Plaintiffs propose a meager 30 hours more than that in this nationwide multi-district, multi-plaintiff case.

- Viewed from any angle, Plaintiffs' suggestion that Pilgrim's be limited to 100 deposition hours is simply unworkable.  With 20 facilities at issue and only 100 deposition hours, Pilgrim's would have 5 deposition hours per facility—2 hours less than a full deposition under the Federal Rules.  With 323 named plaintiffs in the complaints prior to the filing of the consolidated complaint and only 100 deposition hours, Pilgrim's would have only 30 minutes for the named plaintiffs in the underlying actions.

- Because the consolidated complaint has 12 named Plaintiffs, Pilgrim's is entitled to depose the named Plaintiffs for a maximum of 84 hours.  Under Plaintiffs' proposal, this leaves only 16 hours for other depositions.  Pilgrim's should not be required to shorten depositions of named plaintiffs in an effort to scratch the surface on the remaining 3,000+ plaintiffs, a number which Plaintiffs' counsel is seeking to expand.

- Plaintiffs proposal is designed to hamper Pilgrim's ability both to seek decertification (if this action is conditionally certified) and to defend itself at the trials of the separate lawsuits.  It cannot be lost that these cases have been consolidated merely for pretrial purposes.  Unless the consolidated action is resolved by summary judgment or settlement during the pretrial stage, each case will be returned to its original court for trial.  Currently, there are 8 underlying cases, and 4 more that have been conditionally transferred.  Pilgrim's is entitled to sufficient discovery so that it may seek to learn the relevant facts in each of these 12 cases.

- Plaintiff's proposal of a mere 100 hours of deposition time is as unworkable as a proposal from Pilgrim's to conduct discovery on *every* named and opt-in Plaintiff.  Pilgrim's, however, seeks only a reasonable amount of discovery so that it may properly defend itself in each of the pending lawsuits.

- It is too early at this juncture to determine the number of depositions needed or permitted because the issue of conditional certification has not been resolved and the parties have no information on the total number of opt-ins.  Therefore, this matter should be reviewed

---

[4]     This is the same proposal that Plaintiffs had before this matter became consolidated for pretrial purposes.  There has been a significant increase in scope of this matter since the MDL ruling, and the discovery allowed should take that fact into consideration.

[5]     In its second conditional transfer order (CTO-2), 4 additional lawsuits have been transferred to this Court.  CTO-2 will become effective upon filing in the Western District of Arkansas.

after the Court has ruled upon the motion for conditional certification, and if conditionally certified, there is a final number of opt-ins. After that time, the Court should permit discovery regarding a representative number of opt-in Plaintiffs. *See Smith,* 236 F.R.D. at 357-58.

E. **Item (12) Proposed deadline for filing motions other than motions for class certification.   (Note: In the typical case, the deadline for filing motions should be no later than sixty (60) days before trial.)**

   <u>PLAINTIFFS' RESPONSE:</u>

   - Motions for summary judgment should be filed no later than 90 days before the close of discovery to permit parties to obtain any needed discovery related to declarations that may be submitted in support of such motion.

   - If a collection action is certified, any motion for decertification should be filed no later than 45 days before the close of discovery to permit parties to obtain any needed discovery related to declarations that may be submitted in support of such motion.

   <u>DEFENDANT'S RESPONSE:</u>

   - If a collective action is conditionally certified, a motion for decertification should be filed no later than 180 days before trial.

   - If a collective action is conditionally certified, a motion for summary judgment should be filed no later than 120 days before trial.

Dated: August 20, 2007

Respectfully submitted,

| | |
|---|---|
| \_\_Joseph M. Sellers_____ | /s/\_\_\_John B. Brown |
| Joseph M. Sellers | John B. Brown |
| Jenny R. Yang | Texas Bar No. 00793412 |
| Cohen, Milstein, Hausfeld & Toll, PLLC | Carrie B. Hoffman |
| 1100 New York Avenue, NW | Texas Bar No. 00787701 |
| Suite 500, West Tower | Michele C. Spillman |
| Washington, DC 20005 | Texas Bar No. 24046889 |
| (202) 408-4600 | GARDERE WYNNE SEWELL LLP |
| (202) 408-4699 Facsimile | 1601 Elm Street |
| | 3000 Thanksgiving Tower |
| Nicholas Patton | Dallas TX 75201 |
| Arkansas Bar No. 63035 | 214-999-3000 |
| Kelly Tidwell | 214-999-4667 (Facsimile) |
| Arkansas Bar No. 88061 | |
| 4605 Texas Boulevard | Jennifer P. Ainsworth |
| P.O. Box 5398 | Wilson Sheehy Knowles Robertson & |
| Texarkana, Texas 75505-5398 | Cornelius |
| (903) 792-7080 | 909 ESE Loop 323, Suite 400 |
| (903) 792-8233 Facsimile | Tyler, TX 75701 |
| | (903) 509-5000 |
| William S. Hommel, Jr. | (903) 509-5092 (Facsimile) |
| Texas Bar No. 09934250 | |
| William S. Hommel, Jr., P.C. | Hon. Joe D. Clayton |
| 1402 Rice Road, Suite 200 | 100 E. Ferguson |
| Tyler, Texas 75703 | Suite 1114 |
| (903) 596-7100 | Tyler, TX 75702 |
| (903) 596-7464 Facsimile | 903-533-9288 |
| | 903-533-9687 (Facsimile) |
| Robert L. Salim | |
| Louisiana Bar No. 11663 | ATTORNEYS FOR DEFENDANT |
| 1762 Texas Street | PILGRIM'S PRIDE CORPORATION |
| Natchitoches, Louisiana 71457-3429 | |
| (318) 352-5999 | |
| (318) 352-5998 Facsimile | |
| | |
| George Chandler | |
| Law Offices of George Chandler | |
| P.O. Box 340 | |
| Lufkin, TX 75902-0340 | |
| (936) 632-7778 | |
| (936) 632-1304 Facsimile | |

Philip R. Russ
2700 South Western #1200
Amarillo, Texas 79109
(806) 358-9293
(806)358-9296  Facsimile

A. Craig Eiland
Texas Bar No. 06502380
2423 Market Street #1
Galveston, Texas 77550-1593
(409) 763-3260
(409) 763-8154 Facsimile

Robert Camp
Cochran Firm, P.C.
505 N. 20th Street
Suite 825
Birmingham, AL  35203
(205) 930-6900
(205) 930-6910  Facsimile

Preyesh Maniklal
Tisha R. Tallman
Maniklal & Dennis, LLP
4360 Chamblee Dunwoody Road
Suite 428
Atlanta, GA  30341
404.875-0630 – phone
678.990.5887 – fax

Peter H. Burke
William Todd Harvey
Burke, Harvey & Frankowski, LLC
2151 Highland Ave.
Suite 120
Birmingham, AL 35205
205-930-9091

Richard Celler
Morgan & Morgan
284 South University Drive
Fort Lauderdale, FL  33324
877-435-9243 – phone
954-333-3515 – fax

_____

David W. Garrison
Deirdre Johnson
Barrett, Johnston & Parsley
217 Second Avenue North
Nashville, TN  37201
615.244.2202 – phone
615.252.3798 – fax

Peter Winebrake
THE WINEBRAKE LAW FIRM, LLC
Twining Office Center, Suite 114
715 Twining Road
Dresher, PA  19025
215.884.2491 – phone
215.884.2492 – fax

**ATTORNEYS FOR PLAINTIFFS**